UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ABN AMRO MORTGAGE GROUP, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  1:04cv492 |
| | ) | |
| MAXIMUM MORTGAGE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on a partial motion to dismiss filed by defendants Rex Wells, Eilatan, Indiana Resource Network and Alliance Property Management on February 7, 2006.  The plaintiff, ABN Amro Mortgage Group, Inc.  ("ABN"), filed its response on February 27, 2006, to which the defendants replied on March 9, 2006.  ABN filed a sur-reply on March 14, 2006, to which the defendants filed a sur-sur-reply on March 24, 2006.

For the following reasons, the partial motion to dismiss will be denied.

Discussion

The original Complaint filed by ABN asserted various common law and statutory claims against Defendants Rex Wells, Eilatan, Indiana Resource Network, and Alliance Property Management.[1]  After initially moving to dismiss ABN's original Complaint in its entirety for

---

[1]  ABN's First Amended Complaint alleges that Eilatan, Indiana Resource Network, and Alliance Property Management are all "names under which Rex Wells does business." *See* Amd. Comp. ¶¶9-11. The First Amended Complaint uses the term "Wells" to refer to both "Wells individually and to the various entities through which he conducted business." *See* First Amd. Comp. ¶8, n.1. For the purpose of this Order, the use of the term "Wells" will refer only to Rex Wells individually. Wells, Eilatan, Indiana Resource Network, and Alliance Property Management will occasionally be referred to collectively as the "Wells Defendants."

failure to state a claim, the Wells Defendants eventually conceded that ABN had stated a claim for damages arising from a civil conspiracy to commit fraud and a claim of unjust enrichment. The remaining claims asserted against the Wells Defendants were dismissed by this Court, including a claim of common law fraud and claims under I.C. §34-24-3-1, an Indiana statute which provides a civil remedy to the victims of certain crimes.[2]

ABN subsequently obtained leave to amend its Complaint, and filed its First Amended Complaint (the "Amended Complaint") on January 26, 2006. The Amended Complaint asserts six separately denominated counts against the Wells Defendants. The Wells Defendants have moved to dismiss the claims set forth against them in Count II (fraud) and in Counts VIII, IX, and X (all of which arise from I.C. 34-24-3-1 and are based on allegations of bank fraud, deception, and criminal mischief, respectively). The Wells Defendants' motion to dismiss does not address the claims set out in Count VI (unjust enrichment) and Count VII (damages arising from a civil conspiracy to commit fraud).

The factual background, as alleged in ABN's Amended Complaint, is as follows. ABN is in the wholesale mortgage lending business. (Amended Complaint, ¶1.) ABN is the fourth or fifth largest wholesale lender in the United States. (Amended Complaint, ¶1.) The transactions at issue in this case involve 149 mortgage loans ABN made to the Nulls or to Brogren. (Amended Complaint, ¶¶69, 70.) Each of the 149 loans was secured by a separate property. (Amended Complaint, ¶¶69, 70.) The Nulls and Brogren purchased each of the properties from the Wells

---

[2] This Court's Order dismissing these claims was entered on May 16, 2005. This Order will be referred to as the "May Order" or the "Order."

Defendants. (Amended Complaint, ¶¶ 29, 46.) ABN alleges that the loans it made to the Nulls and Brogren were for the purpose of financing the acquisition of the properties by the Nulls and Brogren. (Amended Complaint, ¶¶29, 46.) ABN alleges that it was induced by fraud of the Wells Defendants, the sellers of the properties, into making each of the 149 mortgage loans. (Amended Complaint, ¶135.) Additional allegations made in the First Amended Complaint will be discussed as necessary below.

In support of their motion to dismiss, the Wells Defendants first argue that the First Amended Complaint fails to state a cause of action for fraud as a matter of substantive law. More specifically, the Wells Defendants assert that ABN fails to state a claim for fraud because there is no allegation that any Wells Defendant made misstatements directly to ABN.

The Wells Defendants argue that ABN's first Amended Complaint fails to identify a single misrepresentation made by the Wells Defendants to ABN. The first Amended Complaint discusses a variety of misrepresentations alleged to have been by Wells. *See generally*, Sections II(B) and (C) to the first Amended Complaint.  In its First Amended Complaint, ABN alleges the "misstatements to the Nulls and Brogren were relayed to ABN through Maximum Mortgage." (Amended Complaint, ¶9.) The First Amended Complaint similarly alleges that Wells provided false information to Maximum Mortgage about the properties purchased by the Nulls. (Amended Complaint, ¶¶58, 59.) ABN also alleges that Wells recorded "fictitious" mortgages with the Allen County Recorder. (Amended Complaint, ¶¶64, 65.)  The Wells Defendants contend that ABN fails to identify a single statement made by any of the Wells Defendants directly to ABN. The Wells Defendants assert that ABN implicitly recognizes this fact in Paragraph 134 of its first Amended Complaint, which is found in the section setting forth the fraud claim against Wells,

when it states that "Wells also knowingly misrepresented the status of ownership of the properties to ABN, *both through supplying false information to Maximum Mortgage for use in loan applications and by executing and recording false mortgages on the properties*." (emphasis added).  The Wells Defendants state that ABN alleges that Wells made misstatements to the Nulls, to the Brogrens, and to Maximum Mortgage, and that Wells filed "fictitious" documents with the Allen County Recorder's office, but that ABN fails to allege any misstatements made by the Wells Defendants to ABN.  The Wells Defendants claim that, for this reason, ABN's fraud claims against the Wells Defendants fails as a matter of law. [3]

With respect to the Wells Defendants' argument that ABN has not alleged any *direct* misrepresentations to ABN, ABN contends that the Wells Defendants have both misread ABN's Amended Complaint and misstated the law.  ABN notes that Wells relies upon the district court's decision in *Lycan v. Walters*, 904 F. Supp. 884 (S.D. Ind. 1995), for the proposition that Wells cannot be liable for fraud because he had no direct contact with ABN.  ABN argues that Wells' reliance upon *Lycan* is misplaced. In *Lycan*, the defendants did not direct any misrepresentations to the plaintiffs. The plaintiffs relied entirely upon statements made by the defendants in a Letter of Intent to a third party. Accordingly, the court found that the plaintiffs could not have been defrauded because they were not the intended recipients of any fraudulent communications. *See id.* at 897. The court explained that "the plaintiffs cannot premise their

---

[3] The Wells Defendants, in their sur-sur-reply, note that in this Court's May 16, 2005 Order it stated that "if there are no allegations that [Wells] made a misrepresentation to ABN, then he cannot be liable for fraud, as a matter of law."  (May 16, 2005 Order at 12).  Without citation to authority, the Wells Defendants argue that this "holding" by the Court is "law of the case".  The Wells Defendants further state that what the court really meant to say was that Wells must have made a "direct misrepresentation" to ABN, in order for ABN to properly state a fraud claim against any of the Wells Defendants.  The Wells Defendants are incorrect.

fraud claim on statements that were not made to them." *Id.*   ABN argues that the court in *Lycan* did not specifically hold that all misrepresentations must be made directly to the claimant. Rather, the court generally noted the lack of *any* misrepresentations to the plaintiffs. *Id.*  ABN argues that requiring a direct communication would eliminate liability for fraud whenever there is an intervening messenger or intervening mode of  communication.  ABN contends that Wells cannot escape liability simply because Accelerated Title or Maximum Mortgage transmitted the loan applications and closing statements to ABN because, in this case, unlike *Lycan*, ABN was the intended recipient of the misrepresentations.  That is, Wells manufactured the false information knowing that it would be delivered to and relied upon by ABN.  Thus ABN concludes that Wells made false statements of fact to ABN.

ABN further argues that, in any event, Wells did directly communicate false statements to ABN by recording the fictitious mortgages. The Office of the Recorder is a public forum containing information upon which lenders rely when making mortgage loans. The purpose of the records is to demonstrate who owns the relevant real estate and identify any mortgages encumbering it. The fictitious mortgages were recorded so they would be detected by a title search performed by ABN.  ABN argues that a misrepresentation is not insulated from liability simply because it is made to an audience broader than the intended recipient.  ABN further argues that disseminating false information to a group of individuals intending for one particular member of that group to rely upon the misrepresentations constitutes fraud if the targeted member so relies.  ABN contends that Wells' act in recording fictitious mortgages to induce ABN to disburse loan proceeds, a portion of which were applied toward "paying off" Wells, undoubtedly constitutes fraud.

This court finds that ABN has sufficiently alleged that the Wells Defendants made fraudulent statements to ABN.  The alleged scheme in this case is somewhat complex, in that it involves several steps and several parties.  Nevertheless, looking at the scheme as a whole, there is a thread of communication that flows from the Wells Defendants to ABN, with the alleged intent and result of defrauding ABN.  The court finds this sufficient to defeat the motion to dismiss.

The Wells Defendants next assert that ABN has failed to state a claim for fraud with sufficient particularity.  Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistakes should be stated with particularity." Thus, the Complaint must state "the identity of the person who made the misrepresentation, the time, place, and the content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d. 771, 777 (7th Cir. 1994).  The Wells Defendants assert that ABN's First Amended Complaint fails to satisfy these requirements.

The First Amended Complaint names Rex Wells, Eilatan, Indiana Resource Network, and Alliance Property Management as parties.  The Wells Defendants claim that the Complaint makes no attempt to differentiate between the conduct of these parties. Instead, these parties are referred to collectively by ABN as "Wells."   The Wells Defendants argue that when a claim of fraud is made against multiple Defendants, "the Complaint should inform each Defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merchants Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994).  It is not sufficient to "lump together" all the Defendants; instead, the Complaint must "specify who was involved in what activity." *Id.*  The Wells

Defendants argue that the First Amended Complaint makes no attempt to distinguish the conduct of the separate Wells Defendants and fails to inform each of the Wells Defendants of their alleged participation in the fraud claimed by ABN.

In order to satisfy the specificity requirements of Rule 9(b), a complaint must identify the method by which the misrepresentations were communicated to the plaintiff. *Vicom* at 777.  The Wells Defendants claim that the only allegedly fraudulent statements identified by ABN which specifically set out the content of the alleged misrepresentations by the Wells Defendants relate to statements made to the Nulls or Brogren regarding the condition of certain properties. While ABN alleges that these statements were made to ABN through Maximum Mortgage (Amended Complaint, ¶97), the Wells Defendants claim that there is no explanation as to how ABN relayed this information.  The Wells Defendants conclude that because ABN has failed to specify the manner in which the misstatements allegedly made to the Nulls and Brogrens were communicated to ABN, the First Amended Complaint fails to plead these allegations with sufficient particularity.

In response, ABN maintains that its Amended Complaint alleges fraud with sufficient particularity.  "[T]o satisfy the requirements of Rule 9(b), it is not even necessary to plead each element of fraud in detail so long as the 'circumstances constituting fraud' are stated with particularity." *U.S. v. Lutheran Hospital*, CIV 1:97c-174, 1998 WL 1753335, at *6 (N.D. Ind. April 17, 1998) (citations omitted) (emphasis added). The Seventh Circuit has described Rule 9(b)'s particularity requirement as follows: "What a claim of fraud must include . . . is 'particularity' about the details - 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998)

(quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

ABN asserts that its Amended Complaint specifies "who" committed the fraud, "what" the fraud involved, "when" the fraud was perpetuated, and "how/where" the fraud was accomplished.  ABN has attached Appendix A to its brief, which is a chart identifying the particular allegations in the Amended Complaint that it claims satisfy each Rule 9(b) element.

With respect to who committed the fraud, ABN claims that the Amended Complaint is clear. It specifies that Rex Wells was the fraudulent actor. It also explains that Wells committed the fraudulent acts on behalf of the various entities through which he conducts business.  ABN argues that it did not lump together the Wells Defendants and that the  "who" is Rex Wells; both in his personal capacity and as agent of his entities.

ABN states that all of the fraudulent activities applicable to the Wells Defendants are alleged to have been committed by "Wells".   Paragraph 8 of ABN's Amended Complaint defines "Wells" as "Defendant, Rex D. Wells". (Docket No. 134: First Am. Complt. at 2, ¶ 8). Thus, ABN is claiming it was Wells individually who engaged in the fraudulent behavior. Wells' alleged  role in the fraudulent scheme is set forth in detail. Wells allegedly was the impetus behind a scheme to procure funds from ABN under false pretenses. In particular, Wells assembled a group of  "professionals" for the purpose of carrying out multiple real estate transactions with unsuspecting buyers (Nulls and Brogren). Wells then ensured that the loan applications submitted to ABN represented that the transactions were refinances, when in fact ABN was funding the original acquisition of the properties. (Id. at 14-15, ¶¶ 57-59). This caused ABN to fund the transactions when it would not have otherwise done so. The Amended Complaint also specifically alleges that Wells had the Nulls and Brogren execute fictitious

mortgages for the properties, and that Wells recorded those mortgages with the Allen County Recorder to give the appearance of a refinance transaction. (Id. at 16, ¶ 64).

ABN contends that its Amended Complaint also makes clear what the remaining Wells Defendants' involvement in the fraud was. The Amended Complaint provides that: "[t]he allegations in this Amended Complaint pertaining to 'Wells' relate both to Wells individually and to the various entities through which he conducted business". (Docket No. 134: First Am. Complt. at 2, ¶ 8 n.1). ABN then goes on to identify the entities on whose behalf Wells was acting as Eilatan, Indiana Resource Network and Alliance Property Management. (Docket No. 134: First Am. Complt. at 2-3, ¶¶ 9-11).  Thus, ABN contends that it has sufficiently identified which allegations relate to the Wells Defendants - all allegations pertaining to "Wells".   In other words, Rex Wells committed all of the fraudulent acts, and did so on behalf of all the Wells Defendants.  ABN argues that it cannot be impermissible to "lump together" defendants when the alleged fraud consists of the exact same acts by the exact same actor (as agent for named entities) as this would serve no purpose but to unnecessarily lengthen the pleading.

ABN argues that the case cited by the Wells Defendants for the proposition that defendants cannot be "lumped together" involves different defendants each of which participated in the fraud in a different way. *See Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771 (7th Cir. 1994). The purpose for differentiating the roles of those defendants is to notify each of its individual participation in the fraud.  ABN claims that Rule 9(b) cannot possibly require ABN to simply multiply each "Wells" fraud allegation by the number of Wells Defendants when these allegations consist of the exact same acts.  ABN acknowledges that it was certainly required to differentiate Wells' participation in the fraud from Justin Stuckey and Maximum

Mortgage's participation. However, because each Wells Defendant's participation in the fraud is comprised of the exact same acts, committed by the exact same actor, ABN maintains that it is not required to differentiate between them as there is no difference to be made.

ABN states that the Wells Defendants seem to be arguing that it is impossible for all of the allegations pertaining to Wells individually to also relate to all of the Wells Defendants. ABN argues that this is a factual issue that is inappropriate for determination on a motion to dismiss. ABN maintains that it has sufficiently notified Wells (and his business entities) which alleged fraudulent acts pertain to them and that this is all that is required under the federal pleading standards.  This court agrees that, accepting ABN's allegations as true, Rex Wells, individually, engaged in fraudulent behavior, and was engaging in such behavior on behalf of himself, Eilatan, Indiana Resource Network, and Alliance Property Management.  Thus, ABN has clearly pled the "who" of its fraud allegations.

ABN next argues that it has sufficiently pled the "what" of the fraudulent scheme.  ABN states that the fraudulent scheme was the creation of the false appearance that the Nulls and Brogren were using the proceeds of the money borrowed from ABN to refinance properties they already owned. Wells allegedly did this because he knew that lenders, including ABN, loaned a greater percentage of the appraised value of real estate when refinancing property already owned by a borrower than when providing financing for the original acquisition of the same property. The borrowers had no equity to put into the property and so could not pay more for the property than they could borrow. The more they could borrow, the more they could pay the Wells Defendants for their property.

This Court agrees that ABN has sufficiently pled the details of this scheme.  The First

Amended Complaint alleges that Wells provided ABN with false information contained in 149 loan applications and falsely represented that there were existing mortgages on the subject properties. (Docket No. 134: First Am. Complt. at 14-16, ¶¶ 57-59, 64). Wells allegedly made these false representations to give the appearance that ABN would be lending money to *refinance* the properties, rather than for the original acquisition of the properties. (Id.). The Amended Complaint identifies what false information was included in the loan applications and explains why the mortgages were misleading. (Id.). Specifically, ABN alleges that Wells provided false acquisition dates for the 149 properties, false acquisition prices for the 149 properties, and false information concerning rental income being generated by the borrowers for inclusion in the 149 loan applications submitted to ABN. (Id.). Allegedly, this was all done to misrepresent that the purpose of the loans was to refinance the properties.

ABN also alleges that Wells fraudulently represented to ABN that he was entitled to a "payoff" of an existing mortgage. This was done by recording fictitious mortgages and then seeking the "payoff" of these mortgages when ABN closed on the loans to the borrowers. (Id. at 16, ¶ 64). Thus, Wells misrepresented that ABN was refinancing the properties, and that Wells was entitled to a portion of ABN's loan proceeds. (Id.). The Amended Complaint has, as attachments,  examples of some of the loan applications and mortgages containing the various misrepresentations. (See id. at 15-16, ¶¶ 60, 61, 65, Exs. B-D).  Clearly, ABN has provided "fair notice to the defendant" of the circumstances surrounding the alleged fraud. ABN has notified the Wells Defendants of the precise information that was falsified with respect to all 149 properties, and explained ABN's theory that this was done for the purpose of misrepresenting that (1) ABN was refinancing the properties and (2) Wells was entitled to a portion of ABN's

loan proceeds.

With respect to the "when", ABN's Amended Complaint clearly sets forth the time frame in which the fraud occurred. ABN has alleged that the false information contained in the loan applications was submitted to ABN at or near the closing date of the corresponding property. (Docket No. 134: First Am. Complt. at 14, ¶ 57). The Amended Complaint also sets forth the closing dates of all 149 properties. (Id. at 6-9, 11-13, ¶¶ 28, 30, 34, 36, 47-50). With regard to the fictitious mortgages recorded by Wells, ABN alleges that the mortgages were executed and recorded at or near the time of the respective closings for the properties, and even includes copies of mortgages containing the Recorder's file stamp. (Id. at 16, ¶¶ 64, 65, Ex. D). Accordingly, ABN has clearly notified the Wells Defendants of when each and every fraudulent misrepresentation was made to ABN.

ABN's Amended Complaint also sufficiently alleges the "where" or "by what means" of the fraud. The Amended Complaint alleges that the 149 loan applications were compiled by Maximum Mortgage and Wells and submitted to ABN by mail and/or wire. (Docket No. 134: First Am. Complt. at 14, ¶ 57). The fraudulent mortgages were submitted to ABN *vis á vis* a public forum--the Allen County Recorder' office. (Id. at 16, ¶ 64). Wells filed the mortgages with this forum so the title company would find them and communicate the existence of the mortgages to ABN. Therefore, ABN has sufficiently notified the Wells Defendants of where or by what means the fraudulent information was relayed to ABN.   ABN's Amended Complaint satisfies the particularity requirements of Rule 9(b) as ABN has clearly set forth the "circumstances constituting fraud" with particularity and has provided the Wells Defendants with fair notice of the who, what, when, where, and how of the fraudulent behavior.

12

This court agrees with ABN that the fraud claims asserted against the Wells Defendants in ABN's First Amended Complaint are substantively adequate.  A complaint "need not spell out every element of a legal theory; that's the big difference between notice and code pleading." *Hemenway v. Peabody Coal Co.,* 159 F.3d 255, 261 (7th Cir.1998) (discussing the sufficiency of fraud allegations) (citations omitted). Under Indiana law, actual fraud exists when the following elements are fulfilled: (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) causing the claimant to rely upon the misrepresentation to the claimant's detriment. *America's Directors, Inc. v. Stellhorn One Hour Photo*, 833 N.E.2d 1059 (Ind. Ct. App. 2005). The facts contained in ABN's Amended Complaint, if accepted as true, clearly give rise to a substantive fraud claim. ABN alleges that Wells made material misrepresentations of existing facts in the 149 loan applications. Specifically, ABN has alleged that Wells provided false acquisition dates for the 149 properties, false acquisition prices for the 149 properties, and false information concerning rental income being generated by the borrowers for inclusion in the 149 loan applications submitted to ABN. (Docket No. 134: First Am. Complt. at 14-15, ¶¶ 57-59). More importantly, Wells represented through this misinformation that the purpose of each of the 149 loans was to refinance the properties rather than to fund their original acquisition. (Id.). The fictitious mortgages also constitute material misrepresentations of existing fact. By recording the mortgages with the Allen County Recorder, Wells represented to ABN (and anyone else doing a title search on the properties) that he had taken a valid mortgage of the properties and was entitled to a payoff of the mortgages.

ABN also clearly alleges that Wells made the misrepresentations with full knowledge of

their falsity. (Docket No. 134: First Am. Complt. at 16, ¶ 62). ABN alleges that Wells intended

to cause ABN to believe that the loans were to refinance the properties when in fact the loans

were to finance the original purchase of the properties from Wells. (Id.).

ABN also alleges that it relied upon Wells' misrepresentations, and that it was injured

thereby. (Docket No. 134: First Am. Complt. at 31, 38-39, ¶¶ 135, 186, 189).  Clearly,

ABN has alleged facts in its Amended Complaint which satisfy the substantive pleading

requirements for a fraud claim.

In support of their motion to dismiss, the Wells Defendants also assert that ABN has

improperly based a fraud claim on statements relating to future events.  The Wells Defendants

specifically point to Paragraph 110 of the First Amended Complaint which alleges that:

> Wells knowingly misrepresented to both the Nulls and Brogrens:
> the conditions of properties; the likely appraisal value of the
> properties; the actual appraised value of the properties; the current
> profitability of the property; the feasibility of increasing the rental
> income from the properties; the likelihood of selling the properties
> to the current tenants; and the amount of maintenance required in
> relation to the properties.

The law is clear that fraud cannot be premised on representations that "relate to future, as

opposed to past or existing facts."  Anderson v.  Indianapolis, Indiana AAMCO Dealers

Advertising Pool, 678 N.E.2d 832, 837 (Ind.  Ct.App.  1997).

ABN explains that the misrepresentations made by Wells to the borrowers "are included

in the Amended Complaint to provide a backdrop of the overall fraud scheme."  ABN further

states that its fraud claim against the Wells Defendants is based primarily on the fraudulent loan

applications, the fictitious mortgages, the inaccurate closing statements, and phony title work

which misrepresent past of existing facts.  As the misrepresentations at issue are not a

substantive part of the claims alleged in this case, the court finds that there is no basis on which to strike them from the Amended Complaint.

Next, the Wells Defendants argue that the Amended Complaint fails to state a claim under I.C. § 34-24-3-1, and that I.C. § 34-24-3-1 does not provide ABN with a right of action. I.C. §34-24-3-1 provides a civil remedy to victims of certain crimes against property. ABN alleges that the Wells Defendants are guilty of three separate crimes which trigger the civil remedy statute. In particular, ABN alleges that Wells has committed fraud on financial institutions, I.C. §35-43-5-8; deception, I.C. §35-43-5-3; and criminal mischief, I.C. §35-43-1-2. The bank fraud statute makes it a crime to knowingly execute or attempt to execute a scheme "to defraud a state or federally chartered or insured financial institution" or to obtain the property of such an institution "by means of false or fraudulent pretenses, representations or promises." I.C. 35-43-5-8(a). The deception statute criminalizes a wide variety of behavior.  According to the Wells Defendants, the only portion of the statute plausibly applicable in this case is subsection (6) which makes it a crime to misrepresents with the intent to defraud, "the quality of property." I.C. 35-43-5-3. Both the bank fraud statute and the deception statute are, on their face, anti-fraud statutes and, therefore, claims based on the violation of the statutes are subject to the particularity requirements of Rule 9(b). The only plausible application of the criminal mischief statute would require that the Wells Defendants "knowingly or intentionally cause[d] another to suffer pecuniary loss by deception." I.C. 35-43-1-2. Because the statute is premised on a claim of knowing or intentional deception, it sounds in fraud, and is also subject to the specificity requirements of Rule 9(b).

The Wells Defendants argue that ABN's state law statutory claims fail to satisfy the

15

particularity requirements of Rule 9(b) for the same reasons that ABN failed to properly allege its fraud claim. That is, the Wells Defendants claim that the First Amended Complaint impermissibly lumps together Rex Wells and the remaining Wells Defendants, thereby failing to give notice to each Defendants as to the role played by that Defendant in the alleged fraud. The Wells Defendants also state that ABN's First Amended Complaint specifically identifies the content of allegedly fraudulent statements which relate to only seven properties and, hence, only seven of the 149 loans at issue. The Wells Defendants reiterate their argument that as to the fraudulent statement related to these seven properties or loans, the Complaint fails to allege how the statements were communicated to ABN. This court's analysis and conclusion that ABN has satisfied the particularity requirements with respect to the common law fraud claims likewise apply to the statutory fraud claims.

The Wells Defendants further argue that, even if ABN has alleged the state law statutory claims with sufficient particularity, its claims fail because I.C. §34-24-3-1 does not provide ABN with a right of action. The statute provides a civil remedy from one who "suffers a pecuniary loss as a result of a violation" of a variety of criminal statutes, including the three statutes specified by ABN. I.C. §34-24-3-1, which among other things allows a Plaintiff to recover treble damages, is penal in nature and must be strictly construed. *Johnson v. Naugle*, 557 N.E.2d 1339, 1344 (Ind. Ct. App. 1990) (interpreting the statute when it was codified at I.C. §34-4-30-1). The Wells Defendants maintain that ABN is not entitled to pursue a claim under the statute for losses resulting from bank fraud because it has failed to plead a violation of the bank fraud statute. As to the deception and the criminal mischief claims, the Wells Defendants argue that to the extent ABN has pled any violation of either statute, it does not allege violations that victimized ABN.

16

According to the Wells Defendants, the facts alleged by ABN do not amount to bank fraud. The bank fraud statute makes it a crime to execute or to attempt to execute a scheme to defraud a bank or to obtain any money or other property owned or controlled by a bank. I.C. §35-43-5-8(a).  The Wells Defendants claim that the Amended Complaint  indicates that Wells' alleged fraudulent conduct was directed at the buyers of the properties he was selling, not at ABN.  Similarly, the Wells Defendants received payments from the Nulls and Brogren for the properties Wells conveyed to them.  The Wells Defendants argue that a claim that a seller of real estate allegedly made fraudulent statements to buyers of the real estate does not state a claim for bank fraud as that crime is identified by I.C. §35-43-5-8.

As applied to the facts in this case, a person commits the crime of deception when a person, "with the intent to defraud, misrepresents…the identity or quality of property." I.C. §35-43-5-3(a)(6). Similarly, the criminal mischief statute is invoked, for the purpose of this case, by a person who "intentionally causes another to suffer pecuniary loss by deception." I.C. §35-43-1-2(a)(2).  In this case, the Wells Defendants argue that to the extent that ABN has pled that Wells made misrepresentations regarding the quality of property with the intent to defraud or knowingly or intentionally caused someone to suffer pecuniary loss by deception, the Amended Complaint alleges that the deceptive or fraudulent conduct was directed at the Nulls and Brogren. The Wells Defendants further state that the property Wells obtained was money he received from the Nulls and Brogren as payment for the real estate he transferred to them.  The Wells Defendants argue that to the extent that the Amended Complaint has alleged the existence of either the crime of deception or the crime of criminal mischief, the victims of the alleged criminal conduct are the Nulls and Brogren, not ABN.  The Wells Defendants conclude that

17

because ABN was not the target of the allegedly fraudulent conduct, it may not maintain a cause of action based on deception or criminal mischief statutes.

The Wells Defendant contend that the case of *Sanderson v. Brugman*, 2002 WL 31255470 (S.D. Ind.) is instructive. In that case, the plaintiff alleged that the defendant, a competitor of the plaintiff, had made fraudulent statements regarding the plaintiff's product to customers in an attempt to procure the customers' business. The plaintiff claimed that the defendant's conduct amounted to criminal mischief and deception, and sought the treble damages remedy provided by I.C. §34-24-3-1. Without addressing whether the conduct constituted the criminal offenses defined by the underlying statutes, the Court concluded that the plaintiff had no cause of action under I.C. §34-24-3-1. The Court emphasized that the plaintiff "was not the target of any alleged fraud." *Sanderson.* at *5. The Court concluded that to recognize "such a claim would seem to stretch the civil remedy statute well beyond its purpose and to open a door to a broad vista of new commercial litigation between competitors. Without much clearer signals that the Indiana legislature intended such results, the court finds that Sanderson has failed to state a claim for relief" under I.C. §34-24-3-1. *Sanderson* at *5.

The Wells Defendants argue that, as in *Sanderson*, ABN has attempted to invoke I.C. §34-24-3-1, even though the alleged fraudulent conduct complained of was directed at the Nulls and Brogren.  According to the Wells Defendants, a common sense reading of the statute and the Court's decision in *Sanderson* point to the conclusion that I.C. §34-24-3-1 is intended to provide remedies to those who have been victimized by the underlying crimes and to enhance damages which can be recovered by those crime victims.  The Wells Defendants argue that because ABN has failed to identify conduct by the Wells Defendants amounting to bank fraud, and because

18

ABN was not the target of the allegedly fraudulent behavior of which it complains, ABN has failed to state a cause of action under I.C. §34-24-3-1.

ABN, however, maintains that its statutory fraud allegations are substantively adequate and that it has sufficiently pled facts which would support the elements of all of its statutory fraud claims against the Wells Defendants. In particular, Ind.Code § 35-43-5-8 (defrauding a financial institution) provides as follows:

> A person who knowingly executes, or attempts to execute, a scheme or artifice:
>
> (1) to defraud a state or federally chartered or federally insured financial institution; or
>
> (2) to obtain any of the money, funds, credits, assets, securities or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises [is liable for the crime of fraud on financial institutions] . . . .

ABN has alleged that Wells knowingly executed a scheme to defraud ABN, *and* that Wells knowingly attempted to obtain a portion of the loan proceeds provided by ABN, by representing that the loan transactions were refinances and that Wells was entitled to a payoff of the fictitious mortgages.  Thus, ABN contends that it has clearly alleged facts which give rise to a claim for fraud on financial institutions.

Indiana Code § 35-43-5-3 (deception) provides that "[a] person who . . . knowingly or intentionally makes a false or misleading written statement with intent to obtain property" is liable for the crime of deception.  ABN has claimed that Wells knowingly made false and misleading written statements in the loan applications, closing statements, and fictitious mortgages filed with the Allen County Recorder. Wells' purpose in doing so was to obtain a

portion of the loan proceeds disbursed by ABN.  Thus, ABN concludes that it has alleged facts
sufficient to give rise to a claim of deception.

Indiana Code § 35-43-1-2 (criminal mischief) provides that "[a] person who . . .
knowingly or intentionally causes another to suffer pecuniary loss by deception" is liable for the
crime of criminal mischief. As previously noted, ABN has sufficiently detailed the deceptive
behavior of Wells. ABN has also clearly alleged that it relied upon Wells' false statements in
deciding to fund the loan transactions, causing ABN to suffer pecuniary loss. (Docket No. 134:
First Am. Complt. at 31, 38-39 ¶¶ 135, 186, 189). Therefore, ABN has sufficiently alleged the
crime of criminal mischief.

Indiana Code § 34-24-3-1 provides a civil remedy for anyone who "suffers a pecuniary
loss as a result of a violation" of the criminal statutes set forth above. The Wells Defendants
contend that ABN is not entitled to pursue a claim under this statute because ABN "does not
allege violations that victimized ABN." ABN, however, argues that it has clearly alleged that it
has suffered pecuniary loss as a result of Wells' deceptive acts. (Docket No. 134: First Am.
Complt. at 38-39, ¶¶ 186, 189). ABN specifically alleges that it relied upon Wells'
misrepresentations when it funded the loans and paid off the fictitious mortgages. (Docket No.
134: First Am. Complt. at 14-15, 16, 31, ¶¶ 59, 64, 135). ABN also clearly alleges that its
decision to fund the loans has caused ABN pecuniary loss. (Docket No. 134: First Am. Complt.
at 38-39, ¶¶ 186, 189). ABN states that it may not be the only victim of Wells' fraud, but that it
has undoubtedly alleged that it has suffered a pecuniary loss and was "victimized" by Wells'
fraudulent conduct.

As noted, the Wells Defendants argue that ABN was not harmed by Wells' deceptive acts

because "the property Wells obtained was money he received from the Nulls and Brogren as payment for the real estate he transferred to them." (Docket No. 142: Defs. Br. at 15).  ABN strongly objects to this statement because ABN alleges that Wells was paid directly out of ABN's loan proceeds at the closings. In fact, Wells could not have obtained any money from the Nulls and Brogren because they did not have any money to pay Wells. Nulls and Brogren had to borrow the entire purchase price.  ABN claims that this was the reason for the alleged scheme. Thus ABN concludes that, unlike the *Sanderson* case cited by the Wells Defendants, ABN *was* the target of the alleged fraud. (See Docket No. 142: Defs. Br. at 16). The fraudulent scheme was to induce ABN to loan money when it would not otherwise do so.  According to ABN, it was the *only* party who suffered any pecuniary loss, because it paid off Wells' fictitious mortgages.  This court agrees with ABN that it has alleged facts sufficient to assert a civil cause of action pursuant to Ind. Code § 34-24-3-1.

Conclusion

On the basis of the foregoing, the Motion to Dismiss is hereby DENIED.


 Entered: April 26, 2006.


s/ William C.  Lee
William C. Lee, Judge
United States District Court

21